UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

STEPHANIE ABATA

       Plaintiff

vs.

MARQUETTE-ALGER REGIONAL
EDUCATIONAL SERVICE
AGENCY and GREG NYEN

       Defendants

Case No.

Hon.

_____

Nicholas Roumel (P37056)
**NACHTLAW, P.C.**
Attorneys for Plaintiff
101 N. Main Street, Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
nroumel@nachtlaw.com

_____

**COMPLAINT AND JURY DEMAND**

Plaintiff Stephanie Abata states her complaint as follows:

**PARTIES/JURISDICTION/ VENUE**

1. Plaintiff Stephanie Abata is a resident of Marquette, Marquette County, Michigan.

2. Defendant Marquette-Alger Regional Educational Service Agency ("MARESA" or "the District") is a State of Michigan public intermediate school

district ("ISD") with its principal offices at 321 E. Ohio St., Marquette, Marquette County, Michigan, 49855, phone number (906) 226-5100.

3. ISDs, also called Regional Educational Service Agencies, were created pursuant to the Michigan School Code, MCL 380.601 *et seq.* generally to assist local school districts by providing shared operational services; administrator, teacher, and staff training; coordinate special education services; transportation; and other educational services that are more cost-efficient to be coordinated and shared by the ISD rather than borne by individual local school districts. [See, e.g. https://www.maresa.org/downloads/general_info/3-30-17_website_thevalueofisds.pdf]

4. Accordingly, MARESA services and assists public school districts in Marquette and Alger Counties, along with one public school academy and three private schools. [See, e.g., https://www.maresa.org/downloads/general_info/what_is_maresa.pdf]

5. Defendant Dr. Greg Nyen is MARESA's Superintendent, and has been since July 1, 2020. On information and belief, he resides in Marquette County, Michigan. He is sued in his official and individual capacities.

6. The jurisdiction of this court is invoked pursuant to 42 USC §1983 for deprivation of Plaintiff's right to freedom of speech under the First Amendment to the United States Constitution.

7. Venue is proper in the Western District of Michigan as all parties are located within of the Western District of Michigan and the events described in this lawsuit took place primarily in the Western District of Michigan.

## FACTUAL ALLEGATIONS

### About Stephanie Abata

8. Stephanie Abata is an experienced educator and administrator. She obtained both her Bachelors of Science Degree in Secondary Education, and Masters in Educational Administration, from Northern Michigan University. She holds a Michigan Professional Education Certificate, Michigan Administrator Certificate, Michigan School Business Officials MASBO Educational Data Specialist Certificate, and is a 13-year member of the Michigan Pupil Accounting and Attendance Association.

9. Ms. Abata first performed services for MARESA as an Americorps volunteer from 1996-1998, managing community service projects for high schoolers, and assisting developmentally disabled students with job placement.

10. From 1997-2003, Ms. Abata was a teacher and technology coordinator for North Star Academy in Marquette, a public school chartered by Northern Michigan University. In 2004 she was promoted to become the principal of the Academy, while retaining her duties as technology coordinator, which she maintained until October, 2014.

11. In 2014 she was hired to become MARESA's Systems Administration Administrator. In that role, she had several duties, including but not limited to:

- assisting the 13 school districts under MARESA's purview in various state reports that include: general collection, teacher-student data link, graduation/dropout report and civil rights data report;
- Overseeing Medicaid billing for 13 school districts and MARESA;
- Providing technical support for school information systems and data hubs;
- Conducting professional development for various school employees;
- Attending special education coordinator's meeting to ensure accurate reporting and Medicaid compliance.

12. Throughout her employment, Ms. Abata has performed in an exemplary fashion. She consistently earned outstanding performance evaluations. In an evaluation signed by Defendant Nyen on July 21, 2021, out of thirteen categories, she scored "highly effective" on nine of them, and "effective" on the other four. Defendant Nyen wrote:

> COMMENTS:
> Steph is an extremely loyal and dedicated employee that brings great support to both the agency ang the LEAs we serve. She needs to continue to work with Megan to delegate duties and create a pupil accounting calendar that can be used to guide the department in The future. Overall, a great employee with a constant smile and willingness to help others at all times.

## Ms. Abata is Promoted to Associate Superintendent

13. In that same time frame, the then-incumbent Associate Superintendent of General Education informed Defendant Nyen that she would be leaving her position. Dr. Nyen told Ms. Abata that he thought she would be "perfect" for that job and should apply.

14. Ms. Abata did apply and was named to that Associate Superintendent position on an interim basis, effective July 1, 2021 through June 22, 2022.

15. In the meantime, her position as Systems Administration Coordinator was posted. However, the District did not hire anyone for Systems Administration Coordinator. Defendant Nyen asked Ms. Abata to perform the duties for both positions, Associate Superintendent and Systems Administration Coordinator.

16. Ms. Abata performed the duties of both positions to the best of her ability.

## Ms. Abata's Expression of Free Speech

17. As the school year went on, Ms. Abata became frustrated that MARESA was not serving the public as well as it could be, and was being improperly managed.

18. She decided that she wanted to speak out, not as an employee, but as a member of the public, to make her opinion known.

19. On or about February 8, 2022, Ms. Abata composed a letter to the members of the MARESA Board of Education. She drafted this letter at home, on her own time, on her own device (mobile telephone), using the "Notes" application.

20. She then sent the letter to her home printer, which was also her own device, to be printed via a wireless command, on her own paper.

21. She printed sufficient copies for each of the seven board members, placing each copy in one of her own envelopes, addressed and placed her own stamp on each, and mailed them on her own time in a publicly accessible mailbox.

22. The letter, which was unsigned and anonymous, stated in relevant part as follows:

> Greetings MARESA Board Member,
>
> I am writing you in the hopes you can restore MARESA to what it used to be. A place everyone wanted to work and did what was best for students.
>
> Since the arrival of the "N" team, MARESA has become a turnstile. Employees filing for retirement earlier than planned or finding employment elsewhere. Perhaps you should inquire about getting a list of employees that have left within the last 4 years(most turnover in this time frame ever at MARESA) and question them about why they departed?
>
> Also interview current veteran staff members. Although a number of us are too "scared" to talk against them. If we were guaranteed anonymous participation we may be able to give honest feedback.
>
> I hope you take this seriously and investigate. It is your duty as a Board to ensure a safe environment for employees and that students receive an outstanding education. Also, you should really think twice about the new
> Leadership structure. All it is, is a way for them to reward their friends and to form a mob (strength in numbers).

23. By way of explanation:

- The "N" team referred to Superintendent and Defendant Nyen and his wife, Dr. Tammy Nyen, an Associate Superintendent.
- The letter also went on to name potential witnesses, and criticized another administrator as well as questioning the financial soundness of the district.

24. Ms. Abata was not speaking to the board members pursuant to her official job duties, but as a private citizen.

25. She did not sign or include her name because she feared retaliation, and did not share the contents with anyone except the board members.

26. The statements she made in the letter were matters of public interest, including but not limited to the financial well-being of this public institution, its ability to educate students with special education needs, and the high turnover of experienced employees able to most effectively did what was "best for students."

27. Furthermore, the statements Ms. Abata made were well grounded in facts and information that were known to her at the time she wrote the letter, and were presented in good faith with the intent that the Board look into these matters and better MARESA's operations.

28. On information and belief, while the letter was perceived negatively by the public officials named in the letter, it otherwise caused no material disruption to MARESA's operations.

## The District Retaliates Against Ms. Abata

29. On Friday, February 11, 2022, at approximately 9:10 AM, Ms. Abata was called in to Defendant Nyen's office. Also present was another administrator whom she had criticized in the letter, and the Human Resources director.

30. Defendant Nyen showed Ms. Abata a copy of the letter, but this copy had her MARESA email address at the top, which Ms. Abata had not included when she sent it to the board members.

31. On information and belief, after the letter was received by the District, Defendant Nyen directed that a word search be done on MARESA's information systems to determine who wrote the letter. Reportedly, the word search matched with Ms. Abata's email address, either Ms. Abata had previously synced her personal phone and/or Gmail address with the MARESA servers, or it had automatically synced when she was in the range of MARESA wi-fi network.

32. Armed with this information, Defendant Nyen confronted Ms. Abata with the letter and asked her to confirm that she had written it, and she admitted she had done so.

33. Defendant Nyen told Ms. Abata he was "very disappointed in her" and asked her intent; among other things, Ms. Abata explained that she felt things were bad and that the letter might bring out the issues so that they may be addressed.

34. Defendant Nyen told Ms. Abata to leave her MARESA laptop and that she was suspended with pay pending investigation, and to not conduct any MARESA business with the LEAs (Local Educational Agencies), or to be on MARESA property.

35. She was then escorted out of his office, in front of employees she supervised. She was permitted to take personal items out of her own office and then she was escorted through the General Education area and out the front door.

### Members of the Public Supported Ms. Abata

36. As Ms. Abata remained on suspension, a special MARESA Board meeting was held on February 15, 2022 to consider Ms. Abata's employment.

37. Seven members of the public spoke in support of Ms. Abata, including five local school district superintendents and two MARESA employees, generally praising her outstanding service to MARESA and the local school districts.

38. The Board recessed into closed session to review a confidential legal opinion from its attorney, concerning Ms. Abata's employment status.

39. In the meantime, as she remained on suspension, Ms. Abata obtained her own counsel, who communicated with MARESA's attorney periodically about her employment status.

40. At the regular board meeting on February 28, 2022, Ms. Abata again had an outpouring of community and constituent support, including four local

district superintendents, numerous employees of local districts and MARESA, and community members. Seven spoke at public commentary; statements included:

- The Board needs to focus on the value that the employee has brought to our districts and students over many years and what value she can still bring to our schools. (A local district superintendent)

- She should not be judged by one letter and focus on the value she brings to the districts. Maybe this is a [chance] for change and growth within MARESA. (A local superintendent)

- This person brings so much value to the locals and she has our respect. We value her knowledge and her commitment to the locals. (A local superintendent)

- She is respected in the community and districts, and she does so much for the students and for education. (A local superintendent)

- She has shown so much dedication to her job, comparable to a priest to the church. She will respond to emails and phone calls even at 9 PM at night to help new employees or anyone in the districts. (A local school district counselor)

- She is one of the most black and white persons I know with the highest integrity. She just wants her job back. (A local special education teacher)

- Whether you are a friend or colleague her dedication, commitment and integrity are immeasurable. Please reconsider your actions. (A community member)

41. Notwithstanding her First Amendment protected activity, exemplary job performance, and strong support from the community, Defendant Nyen determined to punish Ms. Abata.

42. He communicated his intent to provide her with a letter of misconduct, a list of "performance concerns," and a notice of insubordination; although he did not ultimately do so, this indicated a clear desire on Defendant Nyen's part to punish Ms. Abata for her protected speech.

43. On March 10, 2022, Defendant Nyen provided a written notification of non-renewal of Ms. Abata's contract for the position of "Interim Associate Superintendent for General Education," dated March 7, 2022, and effective June 30, 2022. Ms. Abata remained on suspension.

44. On March 22, 2022, Ms. Abata provided written notification to Defendant Nyen as follows:

> I am exercising my option under section 4 of my contract to return to my prior (or equivalent) position after June 30, 2022. To be clear, I resign my current administrative position effective June 30, 2022. I understand this notice is a week later than stated in our contract, but I hope it is still acceptable. Please advise.

45. Defendant Nyen responded, on the same date, "Message received and resignation accepted."

46. On May 27, 2022, Defendant Nyen and Ms. Abata had a meeting to discuss her annual performance evaluation.

47. He provided her a written evaluation that criticized her unmercifully in every category, and in every way he could possibly think of. He rated her as "two" for being "minimally effective" in her position. He concluded by stating:

> Statement of Problem:
> Employee (SA) has created a culture of mistrust and has engaged in misconduct while in an interim position of leadership. The employee will return to her previous position with modifications made to the job requirements.
>
> Action necessary to improve the problem (list objectives to be met):
> 1- Employee will not engage in defamatory or gossiping behavior.
> 2- Employee will not speak negatively about her colleagues or employer.
> 3- Employee will complete all aspects of the job while in her office at MARESA.
> 4- Employee will not lobby coworkers or members of the LEAs to intervene on her behalf.

48. At the same time, he provided a three-page "Letter of Misconduct" also dated May 27, 2022 to Ms. Abata, focusing primarily on his negative perception of her anonymous letter to the Board, and concluding that "Further instances of unprofessional behavior or misconduct will result in termination of employment."

49. While ostensibly returning Ms. Abata solely to her Systems Administrator position (now called Information Systems Specialist), Defendant Nyen removed her from her physical office, forbade her from visiting the local school districts she was assigned to assist, provided a different supervisor, stated her job would never have Union protection.

50. These adverse employment actions against Ms. Abata, described herein, were in retaliation for her exercise of First Amendment right to opine on matters of public interest in her personal capacity.

51. Ms. Abata has been damaged economically and non-economically, as set forth more fully below.

## LEGAL ALLEGATIONS
### Count I
### Violation of the First Amendment Right to Free Speech
### Pursuant to 42 USC §1983

52. Plaintiff exercised her First Amendment right, in her personal capacity, regarding a matter of public concern relating to MARESA's public services and fiscal responsibility, among other things, as described above.

53. Plaintiff's protected speech caused neither a material nor substantial disruption to the District.

54. Defendants' adverse employment actions against Ms. Abata were in retaliation for her exercise of her First Amendment rights.

55. This retaliation against Plaintiff violated her right to be free from punishment or retaliation for exercising her First Amendment rights, under the 14th Amendment to the U.S. Constitution, codified by 42 USC § 1983.

56. At all times relevant, Ms. Abata had a clearly established right to freedom of speech of which a reasonable public official would have known.

57. Because Defendant Nyen violated constitutional rights about which a reasonable public official should have known about, he is not entitled to governmental immunity in either his official or individual capacity.

58. Defendant Nyen, by his conduct, showed intentional, outrageous, and reckless disregard for Plaintiff's First Amendment rights, and acted out of vindictiveness, malice and ill will towards Plaintiff, and bias and animus, with intent to punish Plaintiff for and to deter her from exercising those rights.

59. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages as follows:

   a. *Economic Damages* – lost wages, lost earning opportunity, lost value of benefits, attorney fees, incidental and consequential damages.

   b. *Non-Economic Damages* – harm to reputation, emotional distress, mental anguish and continuing mental anguish, denial of social pleasures and enjoyment, inconvenience, embarrassment, ridicule, humiliation, mortification, fear, and outrage.

60. At all times relevant, Plaintiff has made a good faith effort to mitigate her damages.

61. Defendant Nyen's disregard for Plaintiff's rights was intentional, outrageous, vindictive, and malicious, and warrants the imposition of punitive damages.

## Jury Demand

Plaintiff demands a jury trial.

## Relief Requested

*W H E R E F O R E*   Plaintiff requests this honorable court grant her:

    a.    damages against Defendant Nyen in his individual capacity, as warranted by the law and the proofs, including:

        i.    economic and non-economic damages as described above;

        ii.    the greatest possible combination of non-economic and exemplary damages;

        iii.    punitive or special damages as permitted by law;

    b.    costs and pre-judgement and post-judgment interest as permitted by law;

    c.    attorney fees as permitted by law;

    d.    prospective relief, as permitted by law and equity, against Defendant MARESA and Defendant Nyen in his official capacity, for appropriate relief;

    e.    other remedies as are just, appropriate, and permitted by law or equity.

                                  Respectively submitted,

                                  NACHT & ROUMEL, P.C.

                                  *s/Nicholas Roumel*

November 8, 2022                 Nicholas Roumel
                                  Attorneys for Plaintiff